Rita THAYER, Appellant,

v.

STATE of Iowa, Appellees.

No. 01–1744.

Supreme Court of Iowa.

Nov. 14, 2002.

David L. Baker of Riccolo & Baker, P.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General and Greg Knoploh, Assistant Attorney General, for appellees.

STREIT, Justice.

While driving to work in a van owned and operated by her employer, Rita Thayer was paralyzed when the driver of the van lost control causing the van to roll several times. Thayer received workers' compensation benefits for her injuries. She sued her employer, the University of Iowa, for negligence. The district court granted the University's motion for summary judgment. Because we find workers' compensation is Thayer's exclusive remedy, we affirm.

## I. Background and Facts

Rita Thayer was paralyzed when the van she was riding in got into an accident. Thayer was riding in a University of Iowa vanpool from her hometown of Cedar Rapids to her job at the University of Iowa in Iowa City. The University supplied vans to certain employees as part of the University of Iowa Employee Vanpool Program. Each participant in the program had to sign an agreement and pay a monthly fee by payroll deduction.[1] The University subsidized a portion of the costs of the program.

Thayer was not a regular vanpool participant and it is not clear whether she had ridden in the vanpool before. Thayer was riding in the vanpool as a substitute passenger on the day of the accident. She had not signed the agreement with the University for the transportation services. The record is not clear whether she paid a fee for that day.

Thayer sued the University and the driver of the van for negligence. The court granted the University's and the driver's motion for summary judgment. Thayer appealed only the court's dismissal of her claim against the University.

## II. Scope of Review

We review the district court's grant of the University's motion for summary judgment for correction of errors at law. *McNally & Nimergood v. Neumann–Kiewit Contsructors, Inc.*, 648 N.W.2d 564, 570 (Iowa 2002). We consider the evidence presented in the light most favorable to the non-moving party. *Id.* A district court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Iowa R. Civ. P. 1.981(3) (2001).

## III. The Merits

Thayer argues the district court erred in granting the University's motion for summary judgment. In particular, she asserts workers' compensation is not her exclusive remedy. The University contends Thayer

1. The agreement also made clear that no one other than University employees could ride in the vanpool. By signing the agreement, each employee agreed that the vanpool is for his or her privilege in connection with each person's duties at the University. Vanpool participants could make arrangements for a substitute employee passenger. The agreement contained no provisions concerning the situation where an employee was injured while riding as a vanpool passenger.

failed to timely appeal the court's ruling on her negligence claim.

## A. Failure to Timely File Notice of Appeal

The University argues Thayer did not perfect her appeal because she failed to file notice of appeal in a timely manner with the district court clerk. Iowa Rule of Appellate Procedure 6.5 (2001) provides, "appeals to the supreme court must be taken within, and not after, thirty days from the entry of the order, judgment, or decree...." Therefore, a party must file its notice of appeal within thirty days from the entry of an adverse judgment.

 Filing is timely if all necessary documents are filed with the court either

> before service or within a *reasonable time* thereafter.... Whenever these rules or the rules of appellate procedure require a filing with the district court or its clerk within a certain time, the time requirement shall be tolled when service is made, provided the actual filing is done within a reasonable time thereafter.

Iowa R. Civ. P. 1.442(4) (2001) (emphasis added). The time for filing an appeal is tolled upon *service* if the party files within a reasonable time after service.[2]

 On October 3, 2001, the court granted the University's motion for summary judgment. Under our rule, the thirty-day period expired on November 2, 2001. Thayer served notice of appeal on opposing counsel on October 30, 2001.[3] Thayer also sent notice of appeal to the district court clerk and the Supreme Court clerk on that date. All but the district court clerk received the notices. On November 29, 2001, the district court informed Thayer it did not have a notice of appeal on record. Thayer filed her notice of appeal with the district court on December 5, 2001.

Thayer *served* timely notice of appeal on all concerned parties but she did not *file* with the district court clerk until thirty-five days after Thayer served notice of appeal on opposing counsel. Thirty-two days lapsed in between when notice was due to be filed and when Thayer filed her notice with the district court. Because Thayer filed notice of appeal with the district court thirty-two days after it was due, she did not comply with the rules of filing. If, however, Thayer filed the notice "within a reasonable time" after it was served, the time for filing was tolled and she complied with Iowa Rule of Civil Procedure 1.442(4). The question is whether the delay in this case was reasonable.

---

**2.** This tolling provision is analogous to our rule regarding service of process after a party files a petition. Iowa Rule of Civil Procedure 1.302(6) provides a party must serve original notice upon the defendant within ninety days after the petition was filed with the court. A delay of service of the original notice upon defendant of more than ninety days after filing the petition is presumptively abusive. *Meier v. Senecaut*, 641 N.W.2d 532, 542 (Iowa 2002). If abusive delay is established, the court applies a good cause standard to determine whether the delay was justified. *Id.*

**3.** It is not clear whether Thayer mailed or delivered the notice of appeal to opposing

counsel on this date. If she mailed it, service was complete upon mailing. *See* Iowa R.App. P. 6.6(1) (appellant shall serve notice of appeal on each other party or the other party's counsel in accordance with Iowa R. Civ. P. 1.442(2)); Iowa R. Civ. P. 1.442(2) ("Service by mail is complete upon mailing."). If Thayer delivered the notice, service was complete upon "handing it to the attorney or to the other party; or leaving it at the attorney's or other party's office; or, if the office is closed or the person to be served has no office, leaving it at the attorney's or party's dwelling house or usual place of abode with some person of suitable age and discretion residing therein." Iowa R. Civ. P. 1.442(2).

In *Cook v. City of Council Bluffs*, 264 N.W.2d 784 (Iowa 1978), we stated that where a party filed a notice of appeal with the district court clerk twenty-six days after service was due, the service was reasonable because the notice was initially mailed in a timely fashion, but the mail service went awry. We have defined a "reasonable time" as

> such time as is necessary, under the circumstances, for a reasonably prudent and diligent man to do conveniently what the contract or duty requires should be done, having regard for the rights, and possibly the loss if any to the other party affected . . . .

*Cook*, 264 N.W.2d at 787 (quoting *Williamson Heater Co. v. Whitmer*, 191 Iowa 1115, 1119, 183 N.W. 404, 405 (1921)). The facts before us are strikingly similar to those in *Cook*. Thayer sent notice of appeal in a timely manner to the district court clerk, but, for some reason, the notice did not arrive. Thayer missed the thirty-day filing deadline imposed by our rules of appellate procedure. Her delay was reasonable however—Thayer's filing was only thirty-two days after the deadline was tolled. Because both the University and the Supreme Court clerk received notice of the appeal in a timely fashion, we find no unfairness to the University. In *Cook* we found twenty-six days was a reasonable time to file after service. Similarly, under the circumstances of the case before us, thirty-two days was a reasonable time to file the notice of appeal after service on the parties.

## B. Workers' Compensation as an Exclusive Remedy

Iowa Code section 85.20 does not bar a negligence suit against an employer unless the action arose while the employee was acting within the scope of her employment and the injury arose out of and in the course of her employment. *See* Iowa Code § 85.20 (1997). The University contends Thayer's injuries arose out of and in the course of her employment such that workers' compensation benefits are her exclusive remedy. Thayer contends she was merely going to work and is not covered by workers' compensation.

Chapter 85 provides a "zone of protection" in workers' compensation making an employer responsible for workers' compensation benefits only for "any and all personal injuries sustained by an employee arising out of and in the course of employment. . . ." *Id.* § 85.3(1); *Waterhouse Water Conditioning, Inc. v. Waterhouse*, 561 N.W.2d 55, 57 (Iowa 1997); *Frost v. S.S. Kresge Co.*, 299 N.W.2d 646, 648 (Iowa 1980). In general, an injured employee's right to workers' compensation is the employee's exclusive remedy against the employer. *Nelson v. Winnebago Indus., Inc.*, 619 N.W.2d 385, 388 (Iowa 2000); *Bailey v. Batchelder*, 576 N.W.2d 334, 337 (Iowa 1998); Iowa Code §§ 85.3(1), 85.20.

The question we must answer is whether Thayer's injuries arose out of and in the course of her employment with the University. The words "personal injury arising out of and in the course of employment" includes

> [i]njuries to employees whose services are being performed on, in, or about the premises which are occupied, used, or controlled by the employer, and also injuries to those who are engaged elsewhere in places where their employer's business requires their presence and subjects them to dangers incident to the business.

Iowa Code § 85.61(7). An injury "arises out of" employment if there is a causal connection between the employment and the injury. *Waterhouse*, 561 N.W.2d at 57. This inquiry focuses on the character and source of the risk giving rise to the injury

and on the relationship of the risk to the nature of employment. *Meade v. Ries,* 642 N.W.2d 237, 243–44 (Iowa 2002) (citing *Bailey,* 576 N.W.2d at 338). The injury arises in the "course of employment" when the injury and the employment coincide as to time, place, and circumstances. *Id.*

■ The facts before us show Thayer was riding in the vanpool on her way to work at 7:15 a.m. Generally, an accident that occurs while an employee is going to work or coming from work does not arise out of and in the course of employment. *Quaker Oats Co. v. Ciha,* 552 N.W.2d 143, 150–51 (Iowa 1996); *Frost,* 299 N.W.2d at 648. This is known as the "going-and-coming" rule and it has certain recognized exceptions. *Frost,* 299 N.W.2d at 648–49.

■ One such exception to the going-and-coming rule provides that where the employer has furnished transportation as an incident to employment, the injury is said to have arisen out of and in the course of employment.[4] This is because the zone of protection may extend to include injuries occurring even beyond the physical parameters of the employer's premises. *Bailey,* 576 N.W.2d at 339; *Frost,* 299 N.W.2d at 648–49.

[W]hen an injury occurs while a worker is being transported to an intended place of employment in a vehicle owned by the employer, the latter's control over that situation makes the vehicle an extension of the work place.

*Johnson v. Farmer,* 537 N.W.2d 770, 772 (Iowa 1995) (citing 1 Arthur Larson, *Larson's Workmens' Compensation Law* § 17.00, at 4–209 (1995)). "It is particularly true where . . . a supervisory employee of the injured person's employer is, on the employer's behalf, directing the route and operation of the vehicle." *Id.* One relevant fact to consider is whether the employer has made a "prevailing practice" of transporting employees back and forth. *Tucker v. Northeast Louisiana Tree Serv.,* 665 So.2d 672, 678 (La.Ct.App.1995). If such trips are made irregularly, that suggests the employer is providing the service gratuitously. *Id.*

■ Here, the University owned the van and operated it as part of the vanpool program. One of Thayer's co-employees drove the van pursuant to a contract and policies made by the University. The University maintained the van, selected and trained the driver, set the driving schedule, approved the route, and set policies for use of the van. The operation of the van was at all times under the University's control.

---

4. Cases holding an injury arose out of and within the course of employment where an employee was injured in an accident while going to or coming from work in an employer-provided conveyance include: *Peski v. Todd & Brown, Inc.* 158 F.2d 59 (7th Cir. 1946); *Smithey v. Hansberger,* 189 Ariz. 103, 938 P.2d 498 (1996); *Daniels v. Commercial Union Ins. Co.,* 5 Ark.App. 142, 633 S.W.2d 396 (1982); *Securex, Inc. v. Couto,* 627 So.2d 595 (Fla.Dist.Ct.App.1993); *Adams v. United States Fidelity & Guar. Co.,* 125 Ga.App. 232, 186 S.E.2d 784 (1971); *Hansen v. Estate of Harvey,* 119 Idaho 333, 806 P.2d 426 (1991); *Kindel v. Ferco Rental, Inc.,* 258 Kan. 272, 899 P.2d 1058 (1995); *Receveur Constr. Co./ Realm, Inc. v. Rogers,* 958 S.W.2d 18 (Ky. 1997); *McBride v. R.F. Kazimour Transp., Inc.,* 583 So.2d 1146 (La.Ct.App.1991); *Watson v. Grimm,* 200 Md. 461, 90 A.2d 180 (1952); *Lassabe v. Simmons`Drilling, Inc.,* 228 Mont. 94, 743 P.2d 568 (1987); *Schauder v. Pfeifer,* 173 A.D.2d 598, 570 N.Y.S.2d 179 (N.Y.App.Div.1991); *William F. Rittner Co. v. W.C.A.B. (Rittner),* 76 Pa.Cmwlth. 596, 464 A.2d 675 (1983); *Medlin v. Upstate Plaster Serv.,* 329 S.C. 92, 495 S.E.2d 447 (1998); *Pickrel v. Martin Beach, Inc.,* 80 S.D. 376, 124 N.W.2d 182 (1963); *Vaughan's Landscaping & Maint. v. Dodson,* 262 Va. 270, 546 S.E.2d 437 (2001); *Doering v. Wisconsin Labor & Indus. Review Comm'n,* 187 Wis.2d 472, 523 N.W.2d 142 (Wis.Ct.App.1994).

Thayer asserts the going-and-coming rule does not apply to her because she paid for the ride.[5] Thayer argues because the University offered the service for a fee, she is entitled to the same right of recovery as any other paying customer of public transportation would be entitled to recover. The record does not show whether Thayer actually paid anything at all for her ride.

Proof that an employee paid for the ride to work does not take the injury out of the realm of "arising out of and in the course of employment." The mere fact that an employee pays a fare for the transportation does not convert the employee into a passenger for hire with all the legal rights attendant such a person. *See Neyland v. Maryland Cas. Co.*, 28 So.2d 351, 353 (La. Ct.App.1946). The essential character of the employee's status survives even after paying a fare. *Id.* The employer's provision of transportation does not depend on the payment of a fee for the ride, but solely on a person's status as an employee. *Id.* at 354–55; Mark A. Rothstein, *Employment Law* § 6.7, at —— (2d ed.1999) (citing *Peski v. Todd & Brown, Inc.* 158

F.2d 59 (7th Cir.1946); *Neyland,* 28 So.2d at 351). Consideration for the transportation was not simply the payment of money, but the performance of work for the employer. *Neyland,* 28 So.2d at 355. It is reasonable to infer that because the ride depended upon the fact of employment, it was also incidental to it. *See* Iowa Code § 85.61(7) (employer responsible for injuries to an employee caused by dangers incident to employment).

■ The employer-provided-conveyance exception is based on the awareness that, in certain situations, both the employer and the employee derive mutual benefit from the provision of travel incident to employment. *Lassabe v. Simmons Drilling, Inc.,* 228 Mont. 94, 743 P.2d 568, 570 (1987). The only purpose of Thayer's trip was to go to the University of Iowa—the site of her employment—in the van furnished by her employer, all to the benefit of her employer. *See, e.g., Receveur Const. Co./Realm, Inc. v. Rogers,* 958 S.W.2d 18, 21 (Ky.1997) (though employer-provided conveyance was for employee's convenience, it was primarily of benefit to

**5.** Thayer cites one case to support her assertion that payment of a fee is determinative of whether an employee is entitled to and limited by workers' compensation benefits. *See Harris v. Jack O. Farrell, Inc.,* 31 N.C.App. 204, 229 S.E.2d 45 (1976). The facts of *Harris* are easily distinguishable from those before us.

In *Harris* the deceased employee was riding in a vehicle owned and controlled not by the employer but by another employee. *Id.* at 47. The employer subsidized in part the driver-employee's vehicle, but did not give the driver money for his provision of transportation to any other employees. *Id.* at 46. The deceased employee paid the driver—not the employer—for the ride. *Id.* There was no understanding between the deceased employee and the employer regarding the provision of transportation. *Id.* at 46. Though the driver and the deceased employee had an agreement, it was not made within the scope of the driver's

employment. *Id.* The employer did not regularly furnish transportation to its employees. *Id.* Because the injury did not arise out of and in the course of employment, the court affirmed the denial of workers' compensation benefits. *Id.* at 47.

In contrast, in the case before us the University not only furnished the van to its employees as transportation, but also controlled all aspects of the vanpool program. The employer had an explicit agreement with its employees for the transportation. The employer, in part, subsidized the vanpool program for the benefit of all of its employees. Finally, the University provided transportation to people only because of their status as University employees, not because the passengers paid money for the ride. Because the facts of *Harris* are dissimilar from the case before us, the holding of *Harris* is not helpful to this case.

employer and workers' compensation benefits applied).

The fact that an employee paid a fare or did not pay a fare is not determinative, in part, because the employer is not providing transportation for employees out of a desire to make a profit from the operation of the conveyance. *See Neyland,* 28 So.2d at 354. Rather, the employer operates such a program for other reasons not motivated by the desire to see a return from the transportation program. For instance, an employer may provide transportation for employees to and from work through the necessity of obtaining and retaining employees. *Id.* An employer may also do so in the interests of energy conservation or simply to assist employees in their commute. *Croteau–Robinson v. Merrill Trust/Fleet Bank,* 669 A.2d 763, 766 (Me. 1996). Here, the vanpool benefited the University by improving employee recruitment and retention and by reducing parking congestion on campus.

Whether the ride was merely gratuitous or contractual incident to employment, while relevant, is not determinative. The rationale behind the going-and-coming rule is that "the risks of employment continue throughout the journey" and because "the employer is in *control* of those risks by providing transportation, the employee is considered to be within the course of employment." *Hansen v. Estate of Harvey,* 119 Idaho 333, 806 P.2d 426, 431 (1991) (emphasis added). Payment of a fee is not determinative—control is the key.

Thayer was riding in a van provided by the University, her employer, and driven by a co-employee. The University had sole control of the vanpool program. Thayer and the other riders were on their way to work when the accident happened. As such we find Thayer's injuries arose out of and in the course of her employment pursuant to Iowa Code section 85.31. *See,*

*e.g., Schauder v. Pfeifer,* 173 A.D.2d 598, 570 N.Y.S.2d 179 (N.Y.App.Div.1991) (where employer provided vanpool program for employees, furnished the van, formed and maintained the program, and rendered assistance necessary, plaintiff's injuries arose out of her employment making her exclusive remedy workers' compensation).

## IV. Conclusion

The University organized the vanpool program for its employees. The University regularly provided the van and controlled all aspects of the transportation program. The employer's provision of the vanpool was not a gratuitous gesture, but was directly related to the work of the University and primarily benefited the University. Because Thayer was riding in the employer-provided van on her way to work when she was injured, her injuries arose out of and in the course of her employment making her entitled to workers' compensation benefits as her exclusive remedy. The district court properly granted the University's motion for summary judgment.

**AFFIRMED.**