THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Michelle Tower, Appellant,
 
 
 

v.

 
 
 
 SC Department of Corrections, Employer, and State Accident Fund, Carrier, Respondents.
 
 
 

Appeal From Richland County
 J. Mark Hayes, II, Circuit Court Judge

Unpublished Opinion No. 2005-UP-599
Submitted November 1, 2005  Filed November 28, 2005    

AFFIRMED

 
 
 
 Katherine Carruth Link, of W. Columbia, Kenneth M. Mathews, of Columbia, for Appellant.
 Amy Virginia Cofield-Derrick, of Lexington, Cynthia B. Polk, of Columbia, Thomas Carl Cofield, of Lexington, for Respondents.
 
 
 

PER CURIAM:  In this workers compensation case, Michelle Tower appeals a circuit court order affirming the full commissions denial of her claim for benefits.  Tower, an administrative assistant for the South Carolina Department of Corrections, sought benefits under the South Carolina Workers Compensation Act for an injury she sustained on October 30, 2002, when she had an altercation with another employee.  The Department denied Towers claim was compensable, asserting Towers injuries resulted from horseplay that she had instigated.  At issue in this appeal is whether the circuit court erred in holding substantial evidence supported the commissions finding that Towers claim was barred by the horseplay defense.  We affirm.[1]
FACTS
Tower related the following version of the incident:  While doing paperwork at her desk, she had soaked her hand in a cup of water because of a paper cut on her finger.  When she stopped soaking her hand, she stood and extended her hand to flick the water off to avoid getting water on her computer or paperwork.  About the same time, Thomas McQueen, an administrative manager at the Department, was meeting with Towers supervisor near Towers workstation.  Although Tower did not intend to hit anyone with the water, some that she flicked off her fingers hit McQueen.  McQueen then entered Towers work station, sat in Towers chair, grabbed Tower by the arms, threw her across his lap, and spanked her.  Tower tried to get away and screamed at McQueen to stop.  Tower sustained an injury to her neck from the incident.  The injury resulted in her having an anterior cervical discectomy and fusion on January 29, 2003.  Tower also missed work from the latter date until February 27, 2003, after which she returned to work part-time for four weeks.  
McQueen and Sammie Metts, Towers supervisor, gave a different account of the incident.  They both contended that Tower called McQueen over and began flicking drops of water at him from across her desk.  Both also stated that McQueen and Tower had teased each other on previous occasions.  
Tower filed a Form 50 seeking workers compensation benefits, alleging she was injured in the course of her employment on October 30, 2002.  The Department filed a Form 51 with the commission denying Towers injuries were compensable.  
The single commissioner awarded Tower workers compensation benefits, finding McQueen was the aggressor by making a wholly inappropriate response to [Towers] action of flicking water.  The Department appealed, and by a two-to-one vote, an appellate panel of the commission reversed the single commissioners order, finding (1) Tower was injured as the result of her instigation of horseplay; (2) both Tower and McQueen had behaved inappropriately; and (3) although McQueens actions were inappropriate to a greater degree than Towers, his culpability did not alter the fact that Tower had been the instigator.  Tower then appealed to the circuit court, which upheld the order of the commission, finding all activity of both Tower and McQueen constituted horseplay and had been instigated by Tower.[2]  
DISCUSSION
1.  We hold the circuit court correctly determined substantial evidence supported the commissions findings that Tower engaged in horseplay and that Towers conduct barred her from recovering workers compensation benefits.
Horseplay is a term used to describe pranks and practical jokes which are frequently indulged in by congregated workmen.[3]  Concerning horseplay, [c]ourts generally distinguish between aggressors or instigators, who are not compensated when injured, and nonparticipating victims or innocent bystanders who are compensated.[4] 
Tower stated her paper cut was under her fingernail and agreed the natural thing for her to do would have been to place only her fingertips in the water.  Nevertheless, she conceded that she soaked her entire hand in the cup.  Moreover, contrary to Towers statements that she never intended to flick water onto anyone, McQueen testified Tower began flicking water onto him only after he approached Towers work area at her behest and, as he moved from the front of Towers desk to the other side, she continued to flick water onto him, laughing and cutting up.  Even as McQueen was walking away, Tower continued to flick water onto him.  McQueen further stated that he would not have gone behind Towers desk if she had not flicked water onto him.  Metts, who witnessed the entire incident, confirmed McQueens version of the events. 
In support of her argument that the commissions finding that she instigated horseplay was not supported by substantial evidence, Tower argues (1) her actions were brief, innocuous, and non-aggressive and therefore do not rise to the level of horseplay; and (2) McQueens misconduct was separated from hers and was significantly more extreme than her minimal acts of teasing.  The circuit court did not address either of these arguments and the record does not show that Tower made a post-trial for the necessary rulings; therefore, they are not preserved for appeal.[5]
2.  Tower also contends the denial of compensation was premised on an error of law.  In conjunction with this argument, she notes the South Carolina workers compensation statutes do not provide an express exception to coverage for the horseplay defense.  She also suggests public policy warrants reexamination of the application of the horseplay defense in workers compensation cases.  Because, however, none of these issues were addressed by the circuit court in the appealed order, they are not preserved for our review in this appeal.[6]
AFFIRMED.
GOOLSBY, ANDERSON, and SHORT, JJ., concur.

[1]  Because oral argument would not aid the court in resolving the issues on appeal, we decide this case without oral argument pursuant to Rule 215, SCACR.
[2]  In a handwritten order issued from the bench, the presiding circuit judge stated that, although he disagreed with the full commission, he found its decision was supported by substantial evidence.  
[3]  Floyd v. City of Charleston, 287 S.C. 474, 477 n.2, 339 S.E.2d 166, 167 n.2 (Ct. App. 1986) (citing Allsep v. Daniel Constr. Co., 216 S.C. 268, 273, 57 S.E.2d 427, 429 (1950)).
[4]  Allsep v. Daniel Constr. Co., 216 S.C. 268, 273, 57 S.E.2d. 427, 429 (1950) (emphasis added).
[5]  See Pratt v. Morris Roofing Co., 353 S.C. 339, 352, 577 S.E.2d 475, 481-82 (Ct. App. 2003) (holding an issue in a workers compensation case was not preserved for appellate review because it was not ruled on by the commissioner, the full commission, or the circuit court), affd as modified, 357 S.C. 619, 594 S.E.2d 271 (2004).
[6]  See id.